IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| GEORGE FINLINSON,<br><br>                Plaintiff,<br><br>vs.<br><br>MILLARD COUNTY, et al.,<br><br>                Defendants. | ORDER AND<br>MEMORANDUM DECISION<br><br>Case No. 2:16-cv-1009-TC |

Plaintiff George Finlinson filed this lawsuit in 2014 against Millard County and several of its police officers (the "Millard County Defendants") for shooting and tasing him during a standoff that culminated in his arrest.  Mr. Finlinson also named Utah County as a defendant, alleging that he was mistreated in the Utah County Jail while he was waiting for trial.[1]  The complaint asserts that Utah County violated Mr. Finlinson's civil rights under both the federal and Utah constitutions.

On October 29, 2018, the court granted in part and denied in part a motion for summary judgment brought by the Millard County Defendants.  In the same order, the court denied with prejudice Utah County's motion for summary judgment of Mr. Finlinson's federal claim and denied without prejudice its motion for summary judgment of Mr. Finlinson's state claim.  See

---

[1] The lawsuit was originally brought against the Utah County Sheriff's Department, but Utah County was substituted in its place on May 11, 2017.  (ECF No. 40.)  Sheriff Jim Tracy was also originally included as a defendant in his individual capacity, but the claims against him were dismissed on August 20, 2018.  (ECF No. 153.)
[2] As discussed in the earlier order, triable issues of fact exist regarding many of the details of this encounter.  See Finlinson, 2018 WL 5438436 at *14-27.
[3] Mr. Finlinson ultimately pled guilty to reduced charges.  Id. at *6 n.4.
[4] Mr. Finlinson occasionally frames his § 1983 claim as one for violation of his Eighth Amendment rights, rather

Finlinson v. Millard Cty., Case No. 2:16-cv-01009-TC, 2018 WL 5438436 (D. Utah Oct. 29, 2018).

Utah County has now filed a second motion for summary judgment.  (ECF No. 190.)  For the reasons stated below, the motion is denied with prejudice.

## BACKGROUND

The factual background of this case is complex and was detailed at length in the court's previous summary judgment order.  See Finlinson, 2018 WL 5438436 at *1-12.  The court repeats here only those facts that are essential to resolving Utah County's second motion for summary judgment.

Mr. Finlinson suffers from paranoid schizophrenia.  Due to concerns that he was becoming a danger to himself and others, Mr. Finlinson's family worked with the Central Utah Counseling Center to arrange for him to be civilly committed so that he could obtain mental health treatment.  Id. at *1-2.

On July 29, 2014, the Central Utah Counseling Center contacted the Millard County Sheriff's Department and asked that the police detain Mr. Finlinson and transport him to a hospital.  The police officers attempted to seize Mr. Finlinson after pulling him over while he was driving, but the situation quickly escalated into a slow-speed car chase, followed by a standoff in which Mr. Finlinson attempted to ram the officers with his truck.  Near the end of the encounter, the police shot and tased Mr. Finlinson repeatedly.[2]  Id. at *3-6.

Mr. Finlinson received medical care for his gunshot wounds at Utah Valley Regional Hospital.  Id. at *6.  He was also administered a shot of the antipsychotic drug Haldol and was

---

[2] As discussed in the earlier order, triable issues of fact exist regarding many of the details of this encounter.  See Finlinson, 2018 WL 5438436 at *14-27.

prescribed an additional dose of Haldol every four weeks.  Id.  After he was released from the

hospital, Mr. Finlinson was charged with two counts of attempted aggravated murder of police

officers, ten counts of aggravated assault against police officers, assault by a prisoner, failure to

stop or respond to command of police, and interference with arresting officer.[3]  He was booked

into the Utah County Jail (the "Jail") pending trial.  Id.

Upon being taken to the Jail, Mr. Finlinson was placed in administrative segregation and

on suicide watch.  The suicide watch lasted for about six weeks.  He remained in administrative

segregation for approximately eight months—the full duration of his stay in the Jail—after which

he was released to the Utah State Hospital.  Id. at *7-8.  An intake deputy made the initial

decision to place Mr. Finlinson on suicide watch, while the decision to keep him on suicide

watch for six weeks was made by Monte Memmott, a licensed clinical mental health counselor

with whom the Jail had contracted.  Id. at *8.  Lieutenant Nancy Killian, who oversaw housing

policies at the Jail, made the decision to keep Mr. Finlinson in administrative segregation.  Id. at

*6.

While on suicide watch, Mr. Finlinson was unable to wear regular clothes and was not

permitted to wear glasses, even though he had impaired vision.  Being placed in administrative

segregation meant he was mostly isolated from other prisoners in a single cell (though he "could

theoretically talk to other segregated inmates who were housed there" by calling out from his

cell).  Id. at *7-10.  He was also permitted only a single visit from his family over the course of

eight months.  Id. at *10.

---

[3] Mr. Finlinson ultimately pled guilty to reduced charges.  Id. at *6 n.4.

Additionally, the Jail failed to administer Mr. Finlinson's prescribed Haldol shots at the appropriate intervals. Because he was not properly medicated, the state court determined in December 2014 that he was not competent to stand trial. Id. at *12. In January, the same court ordered that he be released to the Utah State Hospital so that he could "receive treatment to be restored to mental competency." Id. at *12. Because of the length of the waiting list, Mr. Finlinson was not transferred to the hospital until April 14, 2015. Id.

### THE PREVIOUS SUMMARY JUDGMENT ORDER

Mr. Finlinson brought a claim against Utah County for violating 42 U.S.C. § 1983, which permits individuals to obtain monetary damages or equitable relief if their federal constitutional rights have been violated. Specifically, Mr. Finlinson alleged that Utah County violated the Due Process Clause of the Fourteenth Amendment when it placed him on suicide watch and in administrative segregation for no legitimate reason and when it wrongfully failed to administer his antipsychotic medication.[4] On February 16, 2018, Utah County moved for summary judgment of this claim. (ECF No. 93.)

In order to hold a municipality like Utah County liable under § 1983, Mr. Finlinson must show that the individuals who actually made the decisions regarding the conditions of his incarceration—in this case, Lieutenant Killian and Mr. Memmott—not only violated Mr.

---

[4] Mr. Finlinson occasionally frames his § 1983 claim as one for violation of his Eighth Amendment rights, rather than his Fourteenth Amendment rights. (See, e.g., Opp'n at 8, 12, 15 (ECF No. 197).) Because Mr. Finlinson's alleged injury occurred after his arrest but before his conviction, his claims should more appropriately be characterized as a violation of the Fourteenth Amendment. See Blackmon v. Sutton, 734 F.3d 1237, 1240 (10th Cir. 2013) ("We know that after the Fourth Amendment leaves off and before the Eighth Amendment picks up, the Fourteenth Amendment's due process guarantee offers detainees some protection while they remain in the government's custody awaiting trial."). That said, at least for the portion of Mr. Finlinson's claim that asserts a lack of appropriate medical care, the applicable standard of review is derived from the Eighth Amendment, making this distinction mostly academic. See Olsen v. Layton Hills Mall, 312 F.3d 1304, 1315 (10th Cir. 2002) ("The right to custodial medical care is clearly established. . . . Although pretrial detainees are protected under the Due Process Clause rather than the Eighth Amendment, . . . this Court applies an analysis identical to that applied in Eighth Amendment cases brought pursuant to § 1983.") (internal quotations omitted).

Finlinson's constitutional rights, but did so "pursuant to official municipal policy."  Finlinson,

2018 WL 5438436 at *24 (quoting Monell v. Dep't of Soc. Servs. Of City of New York, 436

U.S. 658, 691 (1978)).  The court concluded that triable issues of fact existed regarding this issue

and denied this portion of the motion with prejudice.  See generally Finlinson, 2018 WL

5438436 at *28-34.

Mr. Finlinson also brought a claim against Utah County based on its alleged violation of

article I, section 9 of the Utah constitution, which states, in relevant part, that "[p]ersons arrested

or imprisoned shall not be treated with unnecessary rigor."  Utah County moved for summary

judgment of this claim as well.

To prevail at trial, Mr. Finlinson must ultimately show, among other things, that he

"suffered a flagrant violation of his constitutional right to be free from unnecessary rigor."

Finlinson, 2018 WL 5438436 at *34 (quoting Spackman v. Bd. Of Educ. Of Box Elder Cty. Sch.

Dist., 16 P.3d 533, 538-39 (Utah 2000) (internal quotations omitted)).  The court concluded, in

its prior order, that both parties had failed to sufficiently address two issues that were essential to

adjudicating this element of the claim.

First, the Utah Supreme Court had previously noted that it would "leave for another day

the question of whether money damages may be recovered by persons in custody who may have

been subjected to unnecessary rigor but who have not sustained physical injuries."  Id. at *35

(quoting Dexter v. Bosko, 184 P.3d 592, 599 (Utah 2008)).  Neither Utah County nor Mr.

Finlinson explained how this court should interpret this precedent, given the fact that Mr.

Finlinson's injuries were primarily nonphysical.

Second, as noted, Mr. Finlinson's injuries were actually caused by Lieutenant Killian and Mr. Memmott.  Although Utah County's motion addressed at length the standard for holding a municipality liable under federal law, neither party briefed what type of showing was necessary to hold Utah County liable for its employees' actions under the Utah constitution.

In light of the insufficient briefing, the court denied this portion of Utah County's motion without prejudice.  Utah County then filed its Amended Second Motion for Summary Judgment, which seeks to revisit both the § 1983 claim and the unnecessary rigor claim.  (ECF No. 190.)[5]

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit.  A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented."  Tabor v. Hilti, Inc., 703 F.3d 1206, 1215 (10th Cir. 2013) (internal quotation omitted)).

"If the movant meets this initial burden, the burden then shifts to the nonmovant to set forth specific facts from which a rational trier of fact could find for the nonmovant."  Talley v. Time, Inc., 923 F.3d 878, 893-94 (10th Cir. 2019) (internal quotation omitted).  Should the

---

[5] Utah County first filed a Second Motion for Summary Judgment on September 24, 2019.  (ECF No. 184.)  An Amended Second Motion for Summary Judgment was filed one month later, on October 24, 2019, with the explicit intent of replacing the Second Motion.  (ECF No. 190 at 1 ("[T]he Court should disregard the Second Motion . . . that was filed on September 25 [sic], 2019.").)  Mr. Finlinson filed a short objection on November 19 (ECF No. 192) and Utah County filed a reply on December 3 (ECF No. 193).  At a hearing on January 24, 2020, the court determined that it would allow the amended motion to go forward.  (ECF No. 195.)  The court also instructed Mr. Finlinson to file a more comprehensive opposition, which he did on February 4, 2020.  (ECF No. 197.)  Utah County filed its reply on February 18, 2020.  (ECF No. 200.)  Although the court has reviewed all of these materials, for purposes of this order, the court disregards the second motion, objection, and initial reply (ECF Nos. 184, 192, 193) and instead addresses only the amended second motion, opposition, and second reply (ECF Nos. 190, 197, 200).

nonmovant bear the burden of persuasion at trial, "[t]hese facts must establish, at a minimum, an inference of the presence of each element essential to the case." Id. (quoting Savant Homes, Inc. v. Collins, 809 F.3d 1133, 1137 (10th Cir. 2016)).

When evaluating a motion for summary judgment, the court must view the facts and draw all reasonable inferences in favor of the non-moving party. Tabor, 703 F.3d at 1215. But this is only true insofar as "there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Id. (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–587 (1986)).

## ANALYSIS

### I. Reconsideration of the § 1983 Claim

Much of Utah County's amended second motion focuses on whether the court should revisit its decision to deny with prejudice the original motion for summary judgment of Mr. Finlinson's § 1983 claim. At a status conference on March 12, and again in an order issued immediately after that hearing, the court explained that it would not reconsider its findings on the § 1983 claim. (See ECF Nos. 201, 202.)

### II. Unnecessary Rigor Claim

Mr. Finlinson seeks to recover monetary damages for Utah County's alleged violation of article I, section 9 of the Utah constitution, which prohibits treating prisoners with "unnecessary rigor."

> A plaintiff seeking damages for a [state] constitutional violation must show (1) that he or she suffered a flagrant violation of his or her constitutional rights; (2) that existing remedies do not redress his or her injuries; and (3) that equitable

relief, such as an injunction, was and is wholly inadequate to protect the
plaintiff's rights or redress his or her injuries.

Kuchcinski v. Box Elder Cty., 450 P.3d 1056, 1067 (Utah 2019).[6]

### A. Flagrant Violation of a Constitutional Right

This first element raises two distinct questions.  The court first addresses whether Mr.

Finlinson's constitutional rights were violated at all.  Assuming they were, the court then must

determine whether the violation was "flagrant," as the Utah Supreme Court has defined that

term.

### 1.  Violation of a Constitutional Right

Mr. Finlinson has identified three acts by Utah County officials that potentially violated

the unnecessary rigor clause.  First, he contends there was no legitimate reason for him to be

placed on suicide watch.  Second, he argues he should not have been placed in administrative

segregation.  Finally, he maintains that Utah County interfered with his ability to become

competent for trial by failing to provide him with his prescribed antipsychotic medicine.

In its previous summary judgment order, this court warned that there was some

uncertainty regarding whether "unnecessary rigor" could refer to acts that did not physically

injure Mr. Finlinson:

> In Dexter v. Bosko, the Utah Supreme Court . . . articulated a two-part test for
> determining whether a flagrant violation of the "unnecessary rigor" clause has
> occurred: "[f]irst, the nature of the act presents an obvious and known serious risk
> of harm to the arrested or imprisoned person; and second, knowing of that risk,
> the official acts without other reasonable justification."  Id. at 598. . . .

---

[6] Plaintiffs must also satisfy a fourth element, namely that the constitutional provision at issue is "self-executing."
The Utah Supreme Court has held as a matter of law that the unnecessary rigor clause is self-executing, so this
element is not in dispute.  See Bott v. DeLand, 922 P.2d 732, 737 (Utah 1996), abrogated in part on unrelated
grounds by Spackman ex rel. Spackman v. Bd. of Educ. of Box Elder Cty. Sch. Dist., 16 P.3d 533 (Utah 2000).

> But Justice Nehring wrote a concurring opinion, in which . . . he wrote, "This two-part test presumes that the official's act resulted in physical injury to the person in custody" and . . . could "be read to imply that money damages are recoverable only by victims of unnecessary rigor who sustain <u>demonstrable physical injury</u>." <u>Id.</u> at 599 (emphasis added). But he cautioned that "[n]o such inference should be extracted from the adoption of our flagrant violation test. . . . We leave for another day the question of whether money damages may be recovered by persons in custody who may have been subjected to unnecessary rigor but who have not sustained physical injuries." <u>Id.</u>

<u>Finlinson</u>, 2018 WL 5438436 at *35. This court denied the previous motion for summary judgment in part because neither Utah County nor Mr. Finlinson addressed the distinction between physical and nonphysical injuries in their original briefs. But upon further review, the court now concludes that Mr. Finlinson's nonphysical injuries may be a violation of the unnecessary rigor clause.

In ruling on Mr. Finlinson's state constitutional claims, the court looks first to Utah Supreme Court precedent. But to the extent "a federal court cannot ascertain the law of the forum state, [it] must in essence sit as a state court and predict how the highest state court would rule." <u>Wood v. Eli Lilly & Co.</u> 38 F.3d 510, 512 (10th Cir. 1994).[7]

It appears that no Utah Supreme Court or Utah Court of Appeal decisions have addressed this issue since <u>Dexter</u>. Nor has either party asked this court to certify this question to the Utah Supreme Court, as permitted by Utah Rule of Appellate Procedure 41. Nevertheless, upon further review of the <u>Dexter</u> decision, this court now concludes that the Utah Supreme Court would allow Mr. Finlinson's claims to proceed and that a reasonable jury could find that Mr.

---

[7] Although <u>Wood</u> articulated this rule in the context of a federal court sitting in diversity, the same rule has also been applied to state law questions arising from a federal court's exercise of supplemental jurisdiction, as is the case here. <u>See, e.g.</u>, <u>Garcia-Paz v. Swift Textiles, Inc.</u>, 873 F. Supp. 547, 562 (D. Kan. 1995).

Finlinson should be compensated for the nonphysical injuries he suffered in violation of the unnecessary rigor clause.

All five Utah Supreme Court justices joined the majority opinion in <u>Dexter</u>.  <u>Dexter v. Bosko</u>, 184 P.3d 592, 598 (Utah 2008).  Although three justices wrote separately to express concern about whether the actual test formulated in <u>Dexter</u> would apply to nonphysical injuries (<u>id.</u> at 599 (J. Nehring concurring)), it seems clear that the intent of the majority opinion was to allow compensation for such injuries.  The majority opinion, for example, defined "rigor" to mean "an act of strictness, severity, harshness, oppression, or cruelty."  <u>Id.</u> at 596.  The majority opinion also stated that the purpose of the clause, according to the drafters of the Utah constitution, was to "protect persons in jail if they shall be treated inhumanely."  <u>Id.</u>  There is no particular reason to think that words like "oppression," "cruelty," or "inhumane treatment" would refer exclusively to conduct that results in physical harm.  Indeed, the majority opinion went on to point out that at the time the constitutional provision was enacted, one statute prohibited police officers from "willful acts of inhumanity or oppression toward a prisoner" while another forbade officers from "without lawful necessity, assault[ing] or beat[ing] anyone." <u>Id.</u>  Although assaulting or beating someone clearly indicates physical abuse, the existence of a separate statute punishing oppression or inhumane treatment suggests that those terms extend beyond physical harm; otherwise, the two statutes would be duplicative of one another.

Finally, and most persuasively, in contrasting the concept of cruel and unusual punishment with the more expansive concept of unnecessary rigor, the majority opinion specifically cited a type of nonphysical harm as a possible example:

> The restriction on unnecessary rigor is focused on the circumstances and nature of the process and conditions of confinement.  By contrast, the cruel and unusual

> punishment clause in the state constitution is directed to the sentence imposed. While there is some overlap on a factual level, the purposes are different.  Torture may be cruel and unusual but strict silence during given hours may not.  Strict silence, however, may impose unnecessary rigor or unduly harsh restrictions on the service of one's otherwise proper sentence.

Id.  This all supports the conclusion that all five Utah Supreme Court justices recognized in

Dexter the possibility that nonphysical injuries could violate the unnecessary rigor clause.

Three of those justices went further, joining in a concurring opinion for the express

purpose of emphasizing that "unjustifiable human degradation unaccompanied . . . by serious

physical injury" could also be a constitutional violation.  Id. at 599 (J. Nehring concurring).  In

sum, it seems clear that the justices in Dexter all agreed that nonphysical injuries could be a

violation of the unnecessary rigor clause, even though they declined to define precisely when

damages for such injuries would be available.

Utah County argues that, absent a clearer decision by the Utah Supreme Court, this court

should instead be persuaded by the opinion of the Indiana Supreme Court in Ratliff v. Cohn, 693

N.E.2d 530 (Ind. 1998), which interprets Indiana's substantively identical unnecessary rigor

clause.  Although that decision does not explicitly state that Indiana bars recovery for

nonphysical injuries, it includes a lengthy list of injuries that have been allowed in Indiana in the

past, all of which resulted in physical harm.  Id. at 543.

This court has carefully considered the Ratliff decision and is not persuaded that the Utah

Supreme Court would follow the same route.  Significantly, another court, the Oregon Supreme

Court, has allowed claims under Oregon's unnecessary rigor clause based on far less tangible

harms, such as undue embarrassment and invasion of privacy.  See, e.g., Sterling v. Cupp, 625

P.2d 123 (Or. 1981).  In this court's view, the way the Utah Supreme Court approached the issue

11

in <u>Dexter</u> supports the conclusion that the Utah Supreme Court would be more likely to follow the example of the <u>Sterling</u> court than the example of the <u>Ratliff</u> court.

Accordingly, this court now concludes that the nonphysical nature of Mr. Finlinson's harm does not, by itself, warrant dismissing his claim.

In its earlier ruling on Mr. Finlinson's § 1983 claim, the court held that a reasonable jury could conclude that Mr. Finlinson was subjected to administrative segregation because Lieutenant Killian sought to punish him for "unproved charges" of "violence against law enforcement officers," rather than for any legitimate penological reason such as "the safety, security, control, or order of the Jail."  <u>Finlinson</u>, 2018 WL 5438436 at *29.  The court similarly held that "[a] reasonable jury could infer that Mr. Memmott's decision to keep Mr. Finlinson on suicide watch for six weeks had no reasonable relationship to any legitimate governmental objective."  <u>Id.</u> at *30.  Finally, the court held that the "haphazard administration of Mr. Finlinson's medication demonstrates a deliberate indifference to his needs," which resulted in Mr. Finlinson being incompetent to stand trial.  <u>Id.</u> at 31.  Because he was incompetent, the adjudication of the charges against him was delayed, causing him to stay in the Jail and, later, in the Utah State Hospital for longer than might otherwise have been necessary.  <u>Id.</u>

As noted above, according to the Utah Supreme Court, an otherwise proper sentence may violate the unnecessary rigor clause if "unduly harsh restrictions" are added to that sentence. <u>Dexter</u>, 184 P.3d at 596.  Here, although no one disputes that it was proper to detain Mr. Finlinson in advance of trial, a reasonable jury could conclude that isolating Mr. Finlinson for months without any legitimate basis and effectively depriving him of the means of becoming competent for trial were "unduly harsh restrictions" that served no penological purpose.  In other

words, a jury could conclude that the administrative segregation, suicide watch, and lack of

medical treatment violated Mr. Finlinson's rights under article I, section 9 of the Utah

constitution.[8]

    2.  <u>Flagrant Violation</u>

For Mr. Finlinson to prevail, he must show not only that his constitutional rights were

violated, but also that the violation was "flagrant."

The Utah Supreme Court originally explained the meaning of "flagrant violation" in

<u>Spackman ex rel. Spackman v. Bd. of Educ. of Box Elder Cty. Sch. Dist.</u>, 16 P.3d 533, 538 (Utah

2000).  Borrowing from the concept of qualified immunity as articulated by the U.S. Supreme

Court, the <u>Spackman</u> court held that, for a violation to be flagrant, "a defendant must have

violated 'clearly established' constitutional rights 'of which a reasonable person would have

known.'"  <u>Id.</u> at 538 (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)).

In <u>Dexter</u>, the Utah Supreme Court further defined what "clearly established" meant in

this context:

> If an official knowingly and unjustifiably subjects an inmate to circumstances
> previously identified as being unnecessarily rigorous, that is obviously a flagrant
> violation.  Where a clear prohibition has not been previously known to the
> official, more may be required to establish a flagrant violation.  We are satisfied
> that a flagrant violation of the unnecessary rigor clause has occurred whenever the
> following two elements are established: First, the nature of the act presents an
> obvious and known serious risk of harm to the arrested or imprisoned person; and
> second, knowing of that risk, the official acts without other reasonable
> justification.

<u>Dexter</u>, 184 P.3d at 598.

---

[8] The court recognizes, as it did in its previous order, that in addition to his nonphysical injuries, Mr. Finlinson did
arguably suffer some physical harm: "he lost a significant amount of weight, suffered from reduced vision for six
weeks, and was erratically medicated."  <u>Finlinson</u>, 2018 WL 5438436 at *35.

As this court explained in its previous summary judgment order, these decisions address the flagrant violation standard only in the context of holding an <u>individual official</u> liable for violating another's constitutional rights.  Neither case addresses what is necessary to hold a municipality liable.  Yet it would be unusual for the standards to be the same.  The test created in <u>Spackman</u> is based on the federally created qualified immunity doctrine, but under federal law, "municipalities cannot claim qualified immunity."  <u>Webb v. Thompson</u>, 643 F. App'x 718, 724 n.4 (10th Cir. 2016).  One justification for the court's earlier denial of Utah County's first motion for summary judgment was that neither party addressed what standard should be applied to determine when a municipality could be liable under the unnecessary rigor clause.

In its second motion, Utah County contends that the Utah Supreme Court has now resolved this question in Utah County's favor.  Utah County argues that even if Lieutenant Killian and Mr. Memmott violated Mr. Finlinson's constitutional rights, it cannot be held liable for those violations because the Utah Supreme Court has now clarified that "municipalities cannot be held liable [for constitutional violations] . . . pursuant to the traditional tort of respondeat superior."  <u>Kuchcinski</u>, 450 P.3d at 1067 (internal quotations omitted).

The Utah Supreme Court in <u>Kuchcinski</u> did hold that respondeat superior, by itself, is not enough to hold a municipality liable.  But "[b]orrowing from Section 1983 jurisprudence," the Utah Supreme Court went on to hold that

> a plaintiff seeking to prove that a municipality committed a flagrant violation must show . . . (1) the existence of a municipal policy or custom, (2) that this policy or custom evidences a deliberate indifference to the plaintiff's constitutional rights, and (3) that this policy or custom was closely related to the ultimate injury.

<u>Id.</u> at 1067-68 (internal quotations omitted).

14

This is the same standard that federal courts apply in determining whether a § 1983 claim may be pursued against a municipality.  And in its earlier ruling on Mr. Finlinson's § 1983 claim, this court explicitly held that Mr. Finlinson had shown there were triable issues of fact regarding his ability to prevail under this standard.  Finlinson, 2018 WL 5438436 at *36.  More specifically, the court held that Lieutenant Killian and Mr. Memmott were final policymakers, meaning that under federal law, their decisions became municipal policies or customs.  Id. at *32-34; see also id. at *27 (citing Pembaur v. City of Cincinnati, 475 U.S. 469, 480, 483 (1986)).  The court also held that a reasonable jury could conclude that Lieutenant Killian and Mr. Memmott acted not only with indifference to Mr. Finlinson's constitutional rights but with an even higher level of intent, namely a desire to unlawfully punish him based on his criminal charges, even though he had not yet been convicted of those charges.  Id. at *29-31.  Finally, there is no dispute that these decisions were the direct cause of the harms Mr. Finlinson now complains of, namely being needlessly isolated from others and not having his medications appropriately administered.

Utah County apparently does not dispute that these § 1983 conclusions would apply equally to Mr. Finlinson's unnecessary rigor claim under Kuchcinski. [9]  Instead, Utah County urges the court to revisit these findings for both the federal and state claim.  As stated above, the court declines to reconsider its § 1983 holding.  Because the inquiry for municipal liability is the same for federal and state claims, the court concludes that there are triable issues of fact

_____

[9] One possible difference that neither party addresses is the fact that the Kuchcinski court did not explicitly hold that it would equate the decisions of a municipality's final policymaker with the concept of a municipal policy, as federal law does.  Nevertheless, the opinion strongly supports the conclusion that the Utah Supreme Court would adopt this rule as well.  See Kuchcinski, 450 P.3d at 1067 n. 45 ("While we are not bound by Section 1983 caselaw . . . we have relied upon Section 1983 jurisprudence in [other situations and] . . . [w]e again choose to borrow from this jurisprudence in developing the contours of our Spackman test.").

regarding whether Utah County may be held liable for constitutional violations caused by policies enacted by Lieutenant Killian and Mr. Memmott.

**B.  Other Remedies or Injunctive Relief**

In addition to proving a flagrant violation of his constitutional rights, a plaintiff must prove at trial that "existing remedies do not redress his or her injuries" and "that equitable relief, such as an injunction, was and is wholly inadequate to protect the plaintiff's rights or redress his or her injuries." Kuchcinski, 450 P.3d at 1067.

Utah County contends that Mr. Finlinson will be unable to satisfy either of these elements.  The court disagrees.

1.  Existing Remedies

First, Utah County cites to several cases in which a plaintiff's state constitutional claims were dismissed because a simultaneous § 1983 claim was deemed a sufficient remedy.  See Nielson v. City of S. Salt Lake, Case No. 2:06-cv-335-CW, 2009 WL 3562081 (D. Utah Oct. 22, 2009); Cavanaugh v. Woods Cross City, Case No. 1:08-cv-32-TC-BCW, 2009 WL 4981591 (D. Utah Dec. 14, 2009); Hoggan v. Wasatch Cty., Case No. 2:10-cv-01204-DS, 2011 WL 3240510 (D. Utah July 28, 2011).

From these and other cases, a relatively clear pattern emerges regarding how courts in this district have handled complaints that seek relief under both § 1983 claim and the Utah constitution.  At the motion to dismiss stage, courts allow both claims to proceed because it would be premature to determine which claim might be meritorious.  See, e.g., McCubbin v. Weber Cty., Case No. 1:15-cv-132, 2017 WL 3394593 at *23 (D. Utah Aug. 7, 2017); Ostler v. Harris, Case No. 2:18-cv-00254, 2019 WL 2409633 at *3 (D. Utah June 7, 2019).  This is

because a court at the motion to dismiss stage has limited information about any overlap between a plaintiff's state and federal claims.  See McCubbin, 2017 WL 3394593 at *23 ("At this stage, . . . the court cannot say with certainty that damages for [a § 1983 claim] will fully redress the Plaintiffs' injuries and that damages under the state constitution would be inappropriate.")

But at summary judgment, courts regularly conclude that if the § 1983 claim is viable, the state constitution claim should be dismissed because the plaintiff's "injuries can be fully redressed through their 42 U.S.C. § 1983 claim."  Cavanaugh, 2009 WL 4981591 at *6; accord Nielson, 2009 WL 3562081 at *9; Hoggan, 2011 WL 3240510 at *2.

Although both the Cavanaugh and Hoggan courts were specifically dealing with claims brought under Utah's unnecessary rigor clause, neither court addressed the way in which such a claim differs from a § 1983 claim.  The closest either court came to addressing the issue was a footnote in Cavanaugh, where the court noted:

> At the hearing on the motion for summary judgment, Plaintiffs argued that § 1983 was not a sufficient remedy because the state and federal law underlying the claims have different contours.  This, however, is not the test set forth by the Utah Supreme Court.  Rather, "a plaintiff must establish that existing remedies do not redress his or her injuries."  Spackman ex rel. Spackman v. Bd. of Educ., 16 P.3d 533, 538 (Utah 2000) (emphasis added).

 Cavanaugh, 2009 WL 4981591 at *6 n.8.

This statement is mostly accurate: Mr. Finlinson cannot obtain a double recovery for a single injury, even if that injury violated both the federal and state constitution.  That said, with the benefit of more thorough briefing on the differences between the Fourteenth Amendment and the unnecessary rigor clause, the court declines to follow Cavanaugh, Hoggan, and Nielson in dismissing the state claim at the summary judgment stage.  Instead, the court concludes that this situation is more analogous to the motion to dismiss cases because this court "cannot say with

certainty that damages for [the § 1983 claim] will fully redress [Mr. Finlinson's] injuries and that damages under the state constitution would be inappropriate." McCubbins, 2017 WL 3394593 at *23.

To be sure, there is a significant overlap between the federal and state claims. If Mr. Finlinson prevails at trial on the § 1983 claim, then his injury will be fully remedied and no additional damages for the alleged violation of the unnecessary rigor clause will be awarded. Alternatively, if Mr. Finlinson's § 1983 claim fails because the jury concludes that his injury was not caused by a municipal policy, then his unnecessary rigor claim would also necessarily fail because under Kuchcinski, the municipal policy inquiry for both claims is identical.

But there is a third possibility. A reasonable jury could conclude that Utah County's conduct did not violate the federal constitution but did violate the state constitution. In that case, Mr. Finlinson would have no remedy under federal law but would be entitled to damages under state law. Until a jury makes that determination, Mr. Finlinson's state claim must be permitted to go forward.

Even when provisions of the federal and state constitutions are identical, the Utah Supreme Court has cautioned that a separate analysis is necessary because the federal constitution and the Utah constitution provide different protections.

> At the most fundamental level, the standards for state and federal constitutional claims are different because they are based on different constitutional language and different interpretive case law. See, e.g., State v. Tiedemann, 2007 UT 49, ¶ 34, 162 P.3d 1106 (noting that "Utah's search and seizure provisions (which are identical to those in the federal constitution) provide a greater expectation of privacy than the Fourth Amendment as interpreted by the United States Supreme Court" (internal quotation marks omitted)).

Jensen ex rel. Jensen v. Cunningham, 250 P.3d 465, 477-78 (Utah 2011).  These concerns are all the more acute when, as here, the constitutional provisions at issue are entirely different.  See Dexter, 184 P.3d at 595 ("Although the first sentence of article I, section 9 closely approximates the language of the Eighth Amendment to the United States Constitution, the unnecessary rigor provision has no federal counterpart.")

Dexter provides a clear example of the difference between federal and state constitutional protections.  In Dexter, a plaintiff first brought suit in federal court under § 1983, claiming that his due process rights were violated when he was transported in a prison van without wearing a seatbelt and was seriously injured when the van was involved in an automobile accident.  (Because he was restrained, he could not fasten the buckle himself.)  He simultaneously brought a claim under the unnecessary rigor clause.  Dexter v. Ford Motor Co., 92 F. App'x 637, 638, 644 (10th Cir. 2004).  The Tenth Circuit held that the officers responsible for not placing a seatbelt on the plaintiff were protected by qualified immunity because there was no clearly established right to be seatbelted during a prison transport.  Id. at 643-44.  Because that conclusion fully eliminated the plaintiff's federal claim, the Tenth Circuit instructed the district court to remand the unnecessary rigor claim to the state courts.  Upon remand, the state trial court dismissed the suit because, in its view, the Tenth Circuit's findings regarding § 1983 applied equally to the unnecessary rigor claim.  But the Utah Supreme Court reversed, holding that the inquiries were not the same and that the trial court (or, if the evidence was sufficient, a jury) must determine whether a state constitutional violation had occurred, independent of the Tenth Circuit's findings regarding the lack of any federal constitutional violation.  Dexter, 184 P.3d at 595.

The same possibility exists here.  Because it is possible that a jury could allow Mr. Finlinson to recover under his state constitution claim while still denying his federal claim, it would be premature to hold that Mr. Finlinson has an existing remedy under federal law that bars his state claim.

2.  Equitable Relief

Finally, Utah County argues that Mr. Finlinson cannot recover monetary damages because the proper remedy would have been for Mr. Finlinson to file a habeas petition or a request for injunctive relief while he was still in custody.  In support of this argument, Utah County cites Spackman, which held that to recover monetary damages, "a plaintiff must establish that equitable relief, such as an injunction, was and is wholly inadequate to protect the plaintiff's rights or redress his or her injuries."  See Spackman, 16 P.3d at 539

Mr. Finlinson responds by pointing out that the Utah Supreme Court has cautioned that injunctive relief is often unavailable in the context of the unnecessary rigor clause.  See Bott v. DeLand, 922 P.2d 732, 739 (Utah 1996) ("[I]f prisoners' rights under article I, section 9 are violated, injunctive relief may not be adequate to remedy prisoners' injuries.").  Utah County tries to dismiss this argument by noting that the Bott court's statement was made four years before the Utah Supreme Court revisited the issue in Spackman and held that a plaintiff must prove that injunctive relief would be inadequate.  Utah County's argument is misleading.  The Spackman court did hold that a plaintiff must explain why injunctive relief would have been inadequate, but in the very next sentence, the Spackman court directly quoted the above language from Bott, reaffirming that injunctive relief often is not adequate in cases brought under article I,

section 9.  See Spackman, 16 P.3d at 539.  Clearly, then, the statement from Bott cited by Mr.

Finlinson remains good law.

Utah County also points out that the Bott court did not suggest that injunctive relief

would  never be sufficient to remedy an unnecessary rigor violation.  While that is true, Bott

certainly cautioned that such relief would often be unavailable, and on the facts here, the court is

skeptical that injunctive relief was truly a viable alternative for Mr. Finlinson.

As an initial matter, this is not a case in which the harm is ongoing.  Utah County does

not suggest that an injunction would be an appropriate solution today, which stands in contrast to

many cases involving other constitutional violations.  See Spackman, 16 P.3d at 539 n. 11 ("In

this regard, procedural due process claims would appear to be particularly amenable to redress

through equitable means.  Such relief can be precisely tailored to grant the very thing a plaintiff

alleges has been wrongfully denied—due process. For example, a court can generally require the

offending party to redo correctly the 'procedure' that allegedly lacked the mandated

safeguards.").  Instead, Utah County argues only that Mr. Finlinson should have sought

injunctive relief at some point during the eight months that he was detained in the Jail.  The court

concludes a jury must resolve this question.

First, while Mr. Finlinson had access to defense counsel, that attorney was

understandably focused on preparing Mr. Finlinson's defense for the very serious charges he was

facing.  Moreover, Mr. Finlinson's attorney was not ignoring Mr. Finlinson's condition while in

the Jail; he was communicating with the Jail directly in an effort—unsuccessful, at first—to

make sure that Mr. Finlinson was receiving his medication.  See Finlinson, 2018 WL 5438436 at

*11 n.11.  A reasonable attorney in this situation would likely conclude that the most effective

thing he could do to remedy Mr. Finlinson's situation was (1) focus on ensuring that Mr.

Finlinson was competent to stand trial and (2) preparing Mr. Finlinson's defense of the

underlying charges.  Pursuing an entirely separate legal action for a habeas petition would have

been a distraction that could have caused even more delays in obtaining relief for Mr. Finlinson.

Additionally, it is not clear whether Mr. Finlinson's attorney was entirely aware of Mr.

Finlinson's treatment in the Jail, because "[d]uring his eight-month stay, Mr. Finlinson was

allowed one in-person visit (his father and sister visited him) even though his family members

went to the Jail multiple times to see him." Finlinson at *10.  And because he was not receiving

his Haldol shots, it is not certain whether Mr. Finlinson was in the right state of mind to

complain (either to his attorney or to anyone else) about the way the Jail was treating him.  At a

minimum, evidence regarding these issues should be reviewed and considered by the jury.

Finally, in addition to these concerns, there is insufficient information before the court

regarding the parties' expectations regarding Mr. Finlinson's discharge date.  The state court

issued an order for Mr. Finlinson to be transferred to the Utah State Hospital on January 14,

2015, but Mr. Finlinson was not actually transferred until April 14, 2015, because of the length

of the waitlist.  If Mr. Finlinson and his attorney reasonably (but incorrectly) believed he would

get taken off the waitlist sooner and would quickly be leaving the Jail, then they would have an

additional reason not to pursue a costly and time-intensive habeas petition as an alternative

means of relief.

All of these facts simply confirm what the Bott court and the Spackman court were well

aware of: "if prisoners' rights under article I, section 9 are violated, injunctive relief may not be

adequate to remedy prisoners' injuries." Spackman, 16 P.3d at 539 (quoting Bott v. DeLand,

922 P.2d 732, 739 (Utah 1996)).  Because there were other pressing priorities and a lack of information about what was happening, injunctive relief at least arguably was not available to Mr. Finlinson.  A jury must weigh the totality of the circumstances to determine whether Mr. Finlinson's monetary damages claim should be barred due to his failure to first seek other types of redress.

## CONCLUSION

Mr. Finlinson has demonstrated that triable issues of fact exist for each element of his unnecessary rigor claim.  Utah County's Amended Second Motion for Summary Judgment (ECF No. 190) is accordingly DENIED.  Utah County's Second Motion for Summary Judgment (ECF No. 184) is additionally DENIED as moot.

SO ORDERED this 22nd day of April, 2020.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
U.S. District Court Judge